UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THEODA MILLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:17cv0257 PLC |
| | ) |
| ST. LOUIS COUNTY GOVERNMENT, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

This matter is before the Court[1] on Defendant St. Louis County Government's motion for summary judgment. (ECF No. 49). Plaintiff Theoda Mills opposes the motion. (ECF No. 52).

Plaintiff, a restaurant inspector for St. Louis County's Department of Public Health ("the Department"), filed a three-count petition against St. Louis County, Steven Stenger, and several employees of the Department, namely, Sharon Gardner, Donald Edwards, and Joyce Theard, alleging disability discrimination in violation of the Americans with Disabilities Act (ADA) and age and disability discrimination in violation of the Missouri Human Rights Act (MHRA). (ECF No. 3). In his petition, Plaintiff claimed that Defendants discriminated him because he "had a severe allergy to shellfish." (Id. at ¶ 9).

Defendants removed the case to federal court pursuant to 28 U.S.C. § 1441, et seq., and filed motions to dismiss (ECF Nos. 7 & 19). The Court dismissed with prejudice Plaintiff's claims for discrimination based on age and disability under the MHRA and Plaintiff's ADA claim against Steven Stenger, Sharon Gardner, Donald Edwards, and Joyce Theard. (ECF Nos. 30 & 36). Plaintiff's ADA claim against St. Louis County is the sole remaining claim.

---
[1] The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c). (ECF No. 29).

## I.     *Background*[2]

Plaintiff began working for the Department as a seasonal, part-time vector control assistant in September 2007, and he transitioned to the full-time position of vector control supervisor in September 2010. (ECF Nos. 51, 51-7). During the nine months Plaintiff worked as a vector control supervisor, Sharon Gardner, the Department's human resources administrator, received multiple complaints from Plaintiff's supervisor relating to Plaintiff's communication skills and job performance. (Id.). In February 2011, Dr. Dolores Gunn, the health director, advised Plaintiff by letter that his "six-month probationary period that was scheduled to end on February 27, 2011 will be extended three months (May 31, 2011)." (ECF No. 51-12).

After meetings with Plaintiff's supervisors and a conversation with Dr. Gunn, Ms. Gardner determined that Plaintiff "could [not] be successful in his current position because he was not working well with his supervisors." (ECF Nos. 51, 51-4). In May 2011, Ms. Gardner asked Plaintiff if he would accept a demotion to an environmental technician position. (Id.). Plaintiff accepted the demotion, effective the following month. (Id.). At his deposition, Plaintiff testified that he was "relieved" by the offer and "more than willing" to work as an environmental technician. (ECF No. 51-7 at 111).

The duties of an environmental technician included, among other things, inspecting food at food pantries and food distributed by the summer feeding program. (ECF No. 51-7 at 16, 56).

---

[2] St. Louis County submitted a statement of uncontroverted, material facts pursuant to Local Rule 4.01. (ECF No. 51). Local Rule 4.01(E) provides that "[a]ll matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." E.D.Mo. L.R. 4.01(E). Plaintiff did not file a statement disputing those facts. Accordingly, the Court will deem all matters St. Louis County set forth in its statement that are supported by evidence in the record as admitted by Plaintiff for purposes of summary judgment. See, e.g., Parris v. McDonald, No.4:14-CV-1808, 2016 WL 2894701, at *2 (E.D. Mo. May 18, 2016).

Pursuant to the Department's progression policy, when an environmental technician successfully completed a two-year term, he or she automatically promoted to the position of environmental representative. Environmental representatives inspected restaurants, swimming pools, childcare facilities, tobacco retailers, and lodging facilities. (ECF No. 51).

In May 2013, Plaintiff emailed Ms. Gardner inquiring about his upcoming promotion and pay increase. (Id.). He did not mention a food allergy or a desire not to perform restaurant inspections. (Id.). The Department promoted Plaintiff to environmental representative in June 2013. (Id.).

In July 2013, Plaintiff emailed Joyce Theard, the Department's assistant environmental health director, expressing interest in reassignment to the part-time position of special purpose monitoring (SPM) collector.[3] (ECF No. 51-18). In the email, Plaintiff stated: "I would like to express my interest in operating in the part-time position of SPM collector and forego my full-time position as an Environmental Representative. I have some long standing issues working in certain food environments and base my request on them." (ECF No. 51-18). Ms. Theard responded, thanking Plaintiff for his "interest to be reassigned to the SPM program as a part-time, term (grant) employee" and explaining that "this position has yet to be established and is pending approval from county administration." (Id.). When the Department posted the position in October 2013, Plaintiff did not apply. (ECF No. 51).

In February 2014, Plaintiff began a six-week training program in restaurant inspection. (ECF No. 51). Plaintiff informed his trainer, Michelle Paillou, that he "did not want to inspect restaurants," but never informed her that he was allergic to shellfish. (ECF Nos. 51, 51-3). Likewise, he informed his manager, Carrie Dickhans, the Department's food and environmental

---

[3] Plaintiff copied the email to Wayne Wilhelm, the Department's environmental laboratories supervisor. (ECF No. 51-6, 51-18).

3

sanitation program manager, that he disliked inspecting restaurants but he did not tell her about his shellfish allergy or request accommodation. (ECF Nos. 51-1).

On April 1, 2014, Plaintiff assisted Ms. Paillou in the inspection of a specialty, seafood grocery store. (ECF No. 51). In his deposition, Plaintiff testified that he began to feel light-headed and dizzy and asked Ms. Paillou if he could leave work early.[4] (ECF No. 51-7 at 23). However, Plaintiff did not inform Ms. Paillou that he felt ill, much less that exposure to shellfish caused his illness. (Id.; ECF No. 51-3). Plaintiff did not tell Ms. Dickhans or Ms. Paillou that exposure to shellfish made him sick because he did not recognize the causal relationship between his sickness and the shellfish exposure. (ECF No. 51-7 at 28-29).

On May 6, 2014, Ms. Dickhans asked a different trainer, Byron Norman, to work with Plaintiff because Plaintiff was struggling to complete the restaurant inspection training. (ECF No. 51-1). Mr. Norman supervised Plaintiff in the inspection of a restaurant that served multiple types of shellfish. (ECF Nos. 51, 51-2). According to Plaintiff's deposition testimony, he handled shellfish during the inspection and suffered a severe allergic reaction that included, among other symptoms, difficulty breathing. (ECF Nos. 51, 51-7 at 12, 17). Plaintiff also stated that he informed Mr. Norman that "I need[ed] to get away from the environment," but did not provide a reason because "I didn't understand why." (ECF No. 51-7 at 13). Mr. Norman, on the other hand, stated in his affidavit that Plaintiff neither complained of feeling sick nor exhibited signs of an allergic reaction. (ECF No. 51-2).

---

[4] At his deposition Plaintiff admitted that, contrary to the allegations in the petition, he was not "hospitalized for several days." (ECF Nos. 3 at ¶ 15; No. 51-7 at 87). Although Plaintiff testified that the allergic reaction required him to take off four days of work, the Department's personnel records reflect that Plaintiff took four hours of previously-scheduled paid time off on April 2, 2014 and took no time off on April 3 or 4, 2014. (ECF No. 51-22). His medical records reflect that he first saw a doctor for his allergic reaction approximately six weeks later, on May 15, 2014. (ECF No. 51-36).

That same day, Plaintiff sent an email, with the subject line "Notice of Resignation," to Mr. Edwards.[5] (ECF No. 51-25). The email stated, in relevant part:

> Today my decision has been made. For months I have toiled with the need to resign, after being forced into a position clearly unsustainable and forces the closure of my tenure here at St. Louis County.
>
> For months, I have tried to rationalize how I have come to this place in work and life. And have concluded that each organization has its own culture and are sometime [sic] unwilling or unable to accept the views and ideas of those wishing to have a little input. This stifling of one's freedom of expression and the under cutting of my personally [sic] and professionally [sic] growth is a remedy [sic] for failure for me. For all the symptoms are present that the time has come to pass to regrettably move on.

(ECF No. 51-25). Plaintiff referenced neither a shellfish allergy nor a need for accommodation.

Mr. Edwards forwarded Plaintiff's resignation letter to Ms. Dickhans the following day. (ECF No. 51, 51-1, 51-26). On May 14, 2014, Ms. Dickhans sent Plaintiff an email accepting his resignation effective June 6, 2014. (EF No. 51-31).

Approximately two weeks after submitting his notice of resignation, Plaintiff sent an email to Ms. Gardner and Ms. Theard informing them of his "adverse reactions to raw meats[6] and shellfish" and requesting accommodation. (ECF No. 51-32). In the email, dated May 30, 2014, Plaintiff acknowledged: "Perhaps this appeal for work modification should have begun with you and others instead of offering my resignation." (Id.). He claimed that he informed Ms. Gardner "more than a year ago about foregoing the promotion to Environmental Representative

---

[5] The parties dispute whether Plaintiff sent the email before or after he performed the restaurant inspection with Mr. Norman. At his deposition, Plaintiff stated that, after going "outside to get air . . . . I went back to the main office, and I gave my resignation, because I could not work in that environment." (ECF No. 51-7 at 18). However, the email communicating the resignation reflects that Plaintiff sent it at 9:02 a.m. (ECF No. 51-26). Mr. Norman attested that the inspection did not begin before 9:02 a.m. (ECF No. 51-2).

[6] Plaintiff did not allege an allergy or "adverse reaction" to raw meat in his petition. (ECF No. 3).

due to my abnormal adverse reactions to raw meat and shellfish," and that he also spoke "about [his] condition" with Mr. Edwards, Ms. Paillou, and Ms. Dickhans. (Id.).

Upon receipt of Plaintiff's email, Ms. Theard conferred with Ms. Gardner, Mr. Edwards, Ms. Paillou, and Ms. Dickhans, all of whom reported they were unaware of Plaintiff's alleged food allergies. (ECF No. 51, 51-5). Ms. Theard responded to Plaintiff by email and informed him that he could not rescind his resignation.[7] (ECF No. 51-33). Plaintiff's final day of employment with St. Louis County was June 6, 2014. (Id.).

## II. *Legal Standard*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record]...which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-movant must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Gannon Int'l, Ltd. v. Blocker, 684 F.3d 785, 792 (8th Cir. 2012).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

---

[7] Ms. Gardner attested that the Department "did not allow [Plaintiff] to rescind his notice of resignation because it had a practice of not permitting any employees to rescind their resignation notices." (ECF No. 51, 51-4). The reason for the policy is to "create finality in the contractual relationship between employer and employee" and allow the Department "to move ahead and plan for the future, without concern that an employee might retract a resignation." (Id.).

6

there is no genuine issue for trial." Id. (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

   III.   *Discussion*

St. Louis County moves for summary judgment arguing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law on Plaintiff's claim of disability discrimination under the ADA. (ECF No. 50). Plaintiff counters that the Court must deny St. Louis County's motion for summary judgment because: his shellfish allergy constituted a disability under the ADA; the Department's employees knew about the disability; the Department refused to provide reasonable accommodation; and the Department constructively discharged Plaintiff. (ECF No. 52).

   A. *Disability discrimination*

St. Louis County argues that it is entitled to summary judgment on Plaintiff's disability discrimination claim because the uncontroverted facts establish that Plaintiff was neither demoted nor terminated on the basis of disability. (ECF No. 50). Plaintiff counters that the Department's refusal to accommodate his disability resulted in his constructive discharge.[8] (ECF No. 52).

---

[8] Plaintiff did not allege constructive discharge in his petition, and the Court denied his motion to amend the petition to add a claim of constructive discharge under the MHRA. (ECF Nos. 3, 54). To the extent that Plaintiff claims in his memorandum in opposition to St. Louis County's motion for summary judgment that the Department constructively discharged him in violation of the ADA, this claim fails. "To prove a cause of constructive discharge, a plaintiff must show (1) a reasonable person in [his] situation would find the working conditions intolerable, and (2) the employer intended to force [her] to quit." Fercello v. Cty. of Ramsey, 612 F.3d 1069, 1083 (8th Cir. 2010). Even if Plaintiff "established that the conditions were sufficiently intolerable," which he has not, there is no evidence that the Department intended to force him to quit or could have reasonably foreseen that he would. To the contrary, the uncontroverted facts show that the Department (1) was unaware that exposure to shellfish made Plaintiff sick and (2) provided additional support to Plaintiff to help him complete his restaurant inspection training.

"The ADA makes it unlawful for a covered employer to discriminate against any 'qualified individual on the basis of disability.'" Hill v. Walker, 737 F.3d 1209, 1216 (8th Cir. 2012) (quoting 42 U.S.C. § 12112(a)). "Discrimination is defined to include 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee] with a disability.'" Faidley v. United Parcel Serv. of Am., Inc., 889 F.3d 933, 940 (8th Cir. 2018) (quoting 42 U.S.C. § 12112(b)(5)(A)).

Where, as here, "the plaintiff lacks evidence that clearly points to the presence of an illegal [discriminatory] motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the McDonnell Douglas, analysis, including sufficient evidence of pretext." St. Martin v. City of St. Paul, 680 F.3d 1027, 1033 (8th Cir. 2012). Under this framework, a plaintiff must first establish a *prima facie* case of disability discrimination, by showing that he: (1) is disabled within the meaning of the ADA; (2) is a qualified individual under the ADA; and (3) suffered an adverse employment action because of his disability. Equal Emp't Opportunity Comm'n v. Prod. Fabricators, Inc., 763 F.3d 963, 969 (8th Cir. 2014). If the plaintiff "can do so, the burden shifts to the [defendant] to articulate some legitimate, nondiscriminatory reason for its action." St. Martin, 680 F.3d at 1033. If the defendant articulates such a reason, "the burden shifts back to the plaintiff to show that the employer's proffered reason is merely a pretext for intentional discrimination." Prod. Fabricators, 763 F.3d at 969 (citing Young v. Warner-Jenkinson Co., Inc., 152 F.3d 1018, 1021 (8th Cir. 1998)).

Assuming, without deciding, that Plaintiff established the first two elements of his *prima facie* case of disability discrimination, the Court considers whether the undisputed facts demonstrate that Plaintiff suffered an adverse employment action because of his disability. In

8

support of his ADA claim, Plaintiff asserts that he "informed multiple [C]ounty employees including Michelle Paillou, Joyce Theard, Sharon Gardner, Carrie Dickhaus, Donald Edwards, and Wayne Wilhelm of his allergic reaction to certain food environments, especially shellfish." (ECF No. 52 at 1). Plaintiff also asserts that he "sought reasonable accommodation to avoid doing inspections at restaurants that handled shellfish" and the Department "ignored" his requests. (Id. at 2).

Plaintiff's deposition testimony contradicts his assertions that he informed his superiors that he had a shellfish allergy. At most, he informed Ms. Theard, Ms. Paillou, and Mr. Edwards that he "couldn't work in certain environments." (ECF No. 51-7 at 31, 34, 87). Likewise, St. Louis County's uncontroverted statement of facts in support of its motion for summary judgment establishes that Plaintiff did not inform Ms. Gardner, Ms. Theard, Ms. Dickhans, Mr. Edwards, Ms. Paillou, or Mr. Norman that he had an allergy or condition that prevented him from coming into contact with shellfish. (ECF No. 51).

Plaintiff also admitted at his deposition that he never "put in writing to anyone" that he had a shellfish allergy or required a reasonable accommodation. (Id. at 123-24). In fact, as Plaintiff admitted at his deposition, even he was unaware that he had a shellfish allergy. He explained that, when he became ill during the inspections on April 1 and May 6, 2014, he did not tell his trainers that he was suffering an allergic reaction because he "couldn't make that relationship" between exposure to shellfish and feeling sick. (ECF No. 51-7 at 13, 28-29, 30, 39, 43). Plaintiff's failure to demonstrate that the Department knew he was allergic to shellfish is fatal to his claim of disability discrimination. See, e.g., Ristrom v. Asbestos Workers Local 34 Joint Apprentice Comm., 370 F.3d 763, 772 (8th Cir. 2004) (plaintiff failed to demonstrate the

requisite causal connection for his ADA claim where plaintiff had not been diagnosed with a learning disability and employer did not know that plaintiff had a learning disability).

Furthermore, even if Plaintiff could demonstrate that the Department knew he had a shellfish allergy, the evidence does not demonstrate that the Department took adverse employment action against him. In regard to the May 2011 demotion to the position of environmental technician, the uncontroverted facts, supported by Ms. Gardner's affidavit and Plaintiff's personnel records, establish that Plaintiff's performance as a vector control supervisor was unsatisfactory. According to Plaintiff's deposition testimony, when Ms. Gardner offered him the position of environmental technician, he felt "relieved" and "more than willing" to accept it. (ECF No. 51-7 at 111). As to his claim that the Department terminated his employment, the uncontroverted facts demonstrate that he resigned. According to his notice of resignation, his decision to resign was based, not on the alleged discrimination or health problems, but the "stifling of [his] freedom of expression[.]"(ECF No. 51-25).

After review of the evidentiary record before this Court, the Court finds that Plaintiff failed to demonstrate the third element of his ADA claim. A plaintiff's failure to advance sufficient evidence that an employer took adverse action on the basis of disability warrants summary judgment in the employer's favor. See Tramp v. Associated Underwriters, Inc., 768 F.3d 793, 804-05 (8th Cir. 2014) (quoting 42 U.S.C. § 12112(a)). St. Louis County is entitled to summary judgment on Plaintiff's discrimination claim under the ADA.

*B. Reasonable accommodation*

In regard to Plaintiff's claim that St. Louis County failed to accommodate his disability, St. Louis County argues that Plaintiff failed to raise a genuine issue of material fact because the undisputed evidence shows that Plaintiff never requested an accommodation. (ECF No. 50 at 7).

Plaintiff counters that he requested an accommodation in his (1) July 2, 2013 email to Ms. Theard and (2) May 30, 2014 post-resignation email to Ms. Theard and Ms. Gardner. (ECF No. 52).

"In a reasonable accommodation case, the 'discrimination' is 'framed in terms of the failure to fulfill an affirmative duty – the failure to reasonably accommodate the disabled individual's limitations,' as required by the ADA." Prod. Fabricators, 763 F.3d at 971 (quoting Peebles v. Potter, 354 F.3d 761, 767 (8th Cir. 2004)). "To determine whether an accommodation for the employee is necessary, and if so, what that accommodation might be, it is necessary for the employer and employee to engage in an 'interactive process.'" Schaffhauser v. United Parcel Serv., Inc., 794 F.3d 899, 906 (8th Cir. 2015) (quoting Peyton v. Fred's Stores of Ark., Inc., 561 F.3d 900, 902 (8th Cir.2009)).

To show that the employer did not engage in the interactive process, the employee must prove:

> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

Id. (citing Peyton, 561 F.3d at 902). "In general, it is the responsibility of the individual with the disability to inform the employer that accommodation is needed." Mole v. Buckhorn Rubber Prods., Inc., 165 F.3d 1212, 1217 (8th Cir. 1999) (quoting Wallin v. Minn. Dept. of Corr., 153 F.3d 681, 689 (8th Cir. 1998)). See also Prod. Fabricators, 763 F.3d at 971 ("[T]he predicate requirement triggering the interactive process is the employee's request for the accommodation." (quotation omitted)).

"A sufficient request for accommodation includes identification and discussion about what specific accommodations might be made to allow the individual to continue to perform the essential functions of his or her job." Lee v. Sw. Bell Tel. Co., No. 6:15-CV-03428-BCW, 2017 WL 5904700, at *4 (W.D. Mo. 2017) (citing Mole, 165 F.3d at 1218). Plaintiff's email of July 2, 2013 did not notify the Department that he had a shellfish allergy, much less communicate a need for reasonable accommodation. Plaintiff merely stated he had "long[-]standing issues working in certain food environments" and expressed interest in a part-time SPM position. (ECF No. 51-18).

Plaintiff did not advise the Department of his food allergy or request an accommodation until after he resigned. At that point, Defendant had formally accepted Plaintiff's resignation and was not obligated to engage in the interactive process.

Plaintiff was the only person in a position to "identify the need for accommodations specific to [his] job and workplace" in light of the health issues he was experiencing. Mole, 165 F.3d at 1218. See also Lee, 2017 WL 5904700, at *4. However, the uncontroverted facts establish that Plaintiff did not request an accommodation. Furthermore, there is no record evidence, beyond Plaintiff's self-serving statements, that he informed any of his superiors about his alleged allergy or need for accommodation. To the extent that Plaintiff stated at his deposition that he informed particular individuals about his allergy, his admission that he did not make the causal connection between exposure to shellfish and feeling sick when the reactions occurred undermines those claims.

Nothing in the record raises a genuine dispute as to whether Plaintiff requested accommodation. The Court therefore grants St. Louis County summary judgment on Plaintiff's failure-to-accommodate discrimination claim.

*IV. Conclusion*

For the reasons set forth above, the Court grants St. Louis County summary judgment on Plaintiff's claim that St. Louis County discriminated against him on the basis of disability in violation of the ADA.

**IT IS HEREBY ORDERED** that St. Louis County's motion for summary judgment (ECF No. 49) is **GRANTED**.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of June, 2018